The ALPS policy ensures an attorney who, while engaging in professional services, commits an act, error, or admission that results in damages. Section 224.3 of the ALPS policy expressly and specifically provides coverage to an attorney when he is acting in the capacity of a trustee. Virginia statutes empower a trustee to invest trust assets at 64.2763. 64.2777 grants a trustee all powers over trust property that an unmarried, competent owner has over his individually owned property. Most critically, 64.2778 grants a trustee, with respect to stocks and securities, the authority to exercise the rights of an absolute owner. Finally, 64.2778 allows a trustee to pay a margin call and implicitly trade on margin. The District Court erred in finding that an exclusion in the ALPS policy, specifically provision 3.1.8, applied. The District Court erroneously concluded that Farthing's acts constituted, quote, negligent supervision by any person of client or trust account funds or property of any other person held or controlled by an insured. I'm a little confused, I guess. You go to state court and you argue, oh, that's our money, our property. Then you come to federal court and you say, oh, no, it's the trustee's property, and so therefore we've been suing negligent supervision. Is that what you did? Well, Judge, to answer the question, it's specifically the Jimenez case sets out specifically the rights of the beneficiaries. They have an equitable interest, but they have a right under the statute and under case law to enforce the provisions of the trust, to require that the trustee would engage or comply or comport his behavior to the reasonable, prudent investment rule. So it's not having to make a claim that it is my property because it's the trustee's property, but they have the equitable interest in the property and the right to require. They're the only party that can require the court to analyze and consider whether his actions comported to the appropriate standard. So it's not a claim that it's our property. It's a claim that he did not follow the reasonably prudent investment rule. He breached his fiduciary duties, and therefore the trust assets were not as valuable had they been, they would have been, had he comported to that standard. Doesn't the Jimenez case also say that the beneficiary has a, quote, substantial ownership interest in trust property, so they are the owner? Well, the court in Jimenez, I think, made it clear that there are two, I think the Jimenez does a couple of things. First of all, it identifies that there is not a separate interest between the trust and the trustee. It makes it clear that the trustee is the legal owner of the property. I agree that Jimenez case does suggest that they have substantial equitable interest in the property, being the beneficiary, but that does not change the fact that in every practical, legal, or meaningful way, the trustee is the owner, the legal owner of the trust assets. He is the only one that can buy, that can sell, that can exercise that authority and control over the assets. It makes no sense to view the trust assets, then, as funds or property of other, another person. And that is... Is there anything you explained in the district court, this whole argument about how the property, it's not the property of another or of any other person? That doesn't seem like it was an argument that you raised in the district court. Well, the argument was raised in the district court. There's multiple pages that there was a discussion between the court and Farthing's counsel about that. About what? About Jimenez? Yes. Right, but not about, not applying Jimenez to this provision. It was about whether, I read that part of the transcript and it seemed like you were talking about something else, about whether Farthing was acting as an intermediary versus as a broker or some other issue. But did anybody ever say to the district court, looking at this language of this exclusion for negligent supervision, this language here where it says any other person doesn't apply here? Well, those words were not used. Okay, were words to that effect used? Yes, there were. To this provision and saying this doesn't apply. Yes, there was the argument in the original brief that 3.1.8, as interpreted, would lead to the absurd result that Farthing, the attorney, the trustee, was giving advice to himself. That was clearly stated and argued. Okay. So that the implicit argument there or understanding is they are one and the same. Okay. That's why it's absurd that he would be giving advice. Okay. And for the same reason. I guess I'm struck because the district court wrote such a thorough opinion. It addressed all kinds of arguments that were raised and it didn't address this one. And when I went back and looked, it seemed to me that that was because nobody told the district court or asked the district court in applying this negligent supervision exclusion, be mindful of this any other person owning the property thing. And I'm just somewhat troubled by that because the district court had a lot on its plate here and nobody brought this to the district court's attention. Well, I'm not sure I agree with that, Your Honor, respectfully. And that because there was clearly the argument was made over and over again about the fact that they're trying to make an argument that he's giving advice to himself, he's doing things to himself. You could only, that would be the implicit understanding that they're one and the same. Quite frankly, Your Honor, again, I don't want to get into quibble in the district court's process in reaching his decision. But if the court would remember, there was an order that was entered prior to the arguments directing the litigants to focus on two things, the investment advice and the broker. And if you remember, the arguments in there apply equally to the issue that we're talking about. And that is because for the same reason that Farthing, the trustee, was not a broker was because he was not an intermediary. That's, in fact, I would suggest why Alps Council declined the court's invitation to make this argument. And the reason is the Securities and Exchange Act, Section 3A, 4A, defines broker as any person engaged in the business of affecting transactions and securities for the account of others. Farthing was not affecting transactions for the account of others. He was not an intermediary. So logically, for the same reasons that Farthing was not a broker, likewise, he was not guilty of negligently supervising the account of others. So those arguments were made to the court. Because the court had directed the parties to speak to those two issues, i.e., negligent supervision and whether or not Farthing would be acts of a broker, that's perhaps why there wasn't as full of argument maybe or explicit as you've suggested. But, again, this was not – my colleague cites, I don't recall the case, but that case was nothing of this nature. That was a case where the parties had agreed on a certain jury instruction and then no complaint was made and then later in the appellate court raised that issue. That's not here. The briefs on our arguments was that 3.1.8 did not apply to these situations. I would concede that the exact statement that you're making may not have been argued, but there were plenty of other statements that would reach the same conclusions. The district court simply ignored this nuance of Virginia law and for that reason committed error in its interpretation of the ALPS policy exclusion. ALPS basically made four arguments in an effort to avoid indemnity. They argued, number one, that Farthing's actions, although legally permissible and statutorily sanctioned as a trustee, did not constitute professional services because professional services were defined not to include the rendering of investment advice. Of course, if we look at the state trial judge's decision, there's nothing in his decision that would suggest that he believed or was ruling that the belief that Farthing's breach of his fiduciary duty resulted in giving faulty investment advice. Again, as we argued, ALPS attempted contortion of this section, again, results in a characterization that Farthing's giving advice to himself. They also argued that damages were not proper because they weren't restitution, because restitutionary damages were excluded. But again, this is not the litigated facts. There was no restitution. No return of anything was ordered. Finally, they argued that they should be able to avoid indemnity because Farthing's acts implicated another exclusion, the exclusion for dishonest or intensely wrongful or harmful acts. Again, you have to look at the trial court's decision. They did not find any expressly declined to reach those points. But moreover, it's important to know that the statute authorizes specifically and expresses this as a function. And remember, attorneys are most often being asked to be trustees by virtue of the fact that they're attorneys. And so it's important to understand that the statute, there's nothing inherently dishonest about an attorney making investments or about margin. It's specifically provided in the statute. And I would say the district court correctly, implicitly rejected these arguments. The district court noted on page 15 of its opinion in order to, quote, there are apparent flaws or a minimum potential flaws with, end of quote, with these three arguments that we've just mentioned. Unfortunately, the district court erred by failing to understand or appreciate the significance of the language any other person, funds of any other person. Under principles, the familiar principles of construction, it cannot be ignored and it must be interpreted by the court. And again, Jimenez, I think the relevant language is when the court stated that an inter vivos trust is inseparable from the parties related to it. The trust does not have separate legal status. The trust cannot even be formed until the assets are transferred to the trustee. And so there's not a separate legal entity. In most trusts, Jimenez court went on to say the trustee acquires legal title to the trust property while the beneficiary is the equitable owner of trust property. So you have this split of their characterization in this case. But Farthing, as the trustee, was owner of the legal title to all the trust assets. The trust isn't a separate legal entity. The assets are therefore not funds or property of any other person. The court, and as a first in looking at the policy, the district court noted in its opinion that the concept of negligent supervision typically involves supervision of other people. And I would argue that his efforts to get around that were also misplaced. Because it's not defined in the policy, it would be given its ordinary meaning, plain meaning. And the negligent supervision, the idea that you're not doing something, it doesn't seem to certainly be what most people would think of the concept of negligent supervision. And importantly, the broader this language is interpreted, the more it is susceptible to more than one meaning. And clearly I would think that there is more than one meaning that can be derived from the use of that term negligent supervision. However, there doesn't seem to be any confusion about the meaning property of any other person. It's clearly the trustee's property. He has the legal title. So it would suggest that it cannot be property of another person. And therefore, the district court erred in ruling otherwise. Thank you, sir.  Thank you, Leonard. Mr. Beyer. Hey, police and court. I'd like to first start with the question that Judge Harris raised, which is on the issue of whether the district court erred in applying Exclusion 3.1.8, which I'll just refer to as the negligent supervision exclusion. Was that presented to the district court below, and should this court rule on it? Al's position is it wasn't presented, and that the law in this circuit is pretty clear that if you want to rely on appeal on a ground, on a summary judgment motion below, you need to raise it with the district court and give them the opportunity to rule. The fact that the judge may have suggested to the parties in an order that the judge wanted to hear on two particular issues, both of which related to the scope of the professional services definition of the policy, did not in any way limit the arguments that the parties were allowed to make. If you review the transcript of the hearing, it's clear that Judge Davis entertained any arguments and would have continued the hearing to allow people to make any arguments they wanted to make. Can you tell me what is ambiguous or unclear about the investment advice carve-out? I'd be happy to address that, Judge. I assume that's the argument they've got to make to get around. First of all, I want to be clear that Judge Davis didn't rule on that. He only ruled on the negligent supervision exclusion, but this court, because we raised it below, can. Our position was below and is now that there's no ambiguity in the investment advice exception. The first thing I want to point out to the court is it's not an exclusion. It's a definition in a policy. If you read the definition, it says professional services include, and then it lists four things, four groups or types of services that fall within the definition of professional services. Then it lists three things that are not included, that are accepted. One of the specific things listed is rendering of investment advice in any context to any person. The argument that we made below to Judge Davis that I make to you today is that investment advice happens in a bunch of contexts. One, for example, is the one that was argued by the other side below, which is a non-discretionary advice situation where the investment advisor has a discussion with the client about a specific investment before getting authorization from the client to execute it. That's not the only context in which investment advice occurs. A lot of people authorize their advisor in advance to have the authority to make decisions on their own, sometimes within client-directed constraints and sometimes not, with the understanding that you'll then report on what you did. That's discretionary investment advice. That's another context that would constitute the rendering of investment advice. Here, we have a subset of that. We have a trustee who was alleged below and, I guess, approved at trial below, had authority to make discretionary investment decisions on behalf of the trust for the benefit of the beneficiaries. Our position is that's squarely within the investment advice exception and is an independent basis on which this court can affirm the district court's judgment below. Did I fully answer your question, Judge Floyd? Yes. Thank you, Judge. Getting back to the waiver issue on the negligent supervision clause, specifically with regard to the any other person language, I just want to point out that when you look at Judge Davis' 40-page detailed opinion, he addressed every other component of the negligent supervision exclusion. The only one he didn't address was the any other person language because it wasn't raised. And when you look at the colloquy at the summary judgment hearing, the lawyer for Mr. Farthing, who has not appealed, was making an argument, as Mr. Larson correctly characterized it, that a trustee is not advising anyone. The trustee is just acting on behalf of the trust for the benefit of the beneficiaries, but he's not advising someone else. And the judge at some point asked Mr. Larson specifically, are you arguing that Mr. Farthing was acting for himself and not for any other person? This is in the transcript at pages 51 to 53. And in response, appellant's counsel said, I quote, I didn't make the point that he was somehow, by the fact that it was his property, by virtue of this concept in Virginia, that he's investing his property. I don't think that really made the difference. That, to me, isn't a real distinction. And so I think I would suggest to your honors that that's the reason why Judge Davis didn't address it in his opinion, is he thought it was waived. And it was waived, and you should not take it up. But if you were inclined to take it up, it also is an argument that lacks merit. And the reason it lacks merit is simple. Counsel is conflating two separate things here. He's conflating ownership of property, on the one hand, and authority to manage and supervise property on the owner's behalf. Counsel doesn't dispute that the Virginia statutes give trustees in Virginia, attorneys that act as trustees, the powers and rights, which I think is what he read from the statute, to act on the owner's behalf, as if they are the owner. But they're not the owner. They're just acting for the benefit of the trust, which is an owner, in the sense that it holds the property, and the beneficiaries, who are the true owners, ultimately. And one way to think about this is that, ask yourself if a trustee could use trust funds the way an owner could, which would include consumption. Can a trustee use the money, take a distribution, and go to Hawaii? Can the trustee use the money and go buy Red Sox season tickets? They can't. Only the owner can do that. I mean, I feel like possibly we're making this harder than it has to be. When you look at this provision as a whole, it's obviously talking about trust accounts. I don't know what else it could be talking about. First of all, it talks about trust accounts. And then in the second sentence, in order to be clear, we're not just talking about your standard client trust accounts. We mean any funds or property of any other person that's being held or controlled by an insured in any capacity. Well, that's obviously a reference to insured as trustee. I don't know what other capacities we might be talking about here. I mean, whatever these three words, what are they? What does any other person might mean in any other context? In this context, how could they be talking about anything but a trust fund is my question. Well, Your Honor, I guess I would answer it in two ways. First of all, I agree with you that trust funds are incorporated in this language and would be encompassed by the language. But I would tell you that I think that the clause is even broader than that. First of all, to get back to one thing that Mr. Larson said, it's obvious from this language that the objects of the supervision are not people. The contract says the objects of the supervision are two categories. A, client or trust account funds or property. B, funds or property of any other person. So it's clear that the object of the supervision is a thing, funds or property, two different buckets of it. Secondly, Judge Harris, it's not just client trust account funds or property and it's not just trust account funds or property. It's funds or property of any person that are in the hands of the insured or that are controlled by the insured in whatever capacity or authority the insured is acting under. And the overall point of this provision is to make it clear that to any lawyer that's getting this particular lawyer's professional liability policy that we are not covering funds handling. We're covering your malpractice. We're covering your errors as being a lawyer. We're even covering your errors as a lawyer if you act as like an arbitrator or a mediator. But we're not covering your funds handling. We're not covering your acting as an investment advisor. Those are excluded. And you can read those in other places in the policy in the professional services definition in exclusion 3.1.9, which also addresses funds handling and basically says a loss of funds that you're handling or controlling. We don't cover that. And so there are cases, Judge Harris, where lawyers have been sued for fraudulent wires and things where it may even be that the funds never actually came into their hands. But if they controlled the sending and receiving, it might fall within the ambit of this exclusion. So I hope that answered your question. It does. Thank you. Let me turn to, if I may, there was an argument made. It hasn't been addressed yet by counsel in his argument, but there was an argument made about whether coverage was illusory given the negligent exclusion provision. Our position on this issue is that there are potential claims that could be covered within this policy that would not be a trustee handling funds or handling client money. There are situations where a lawyer could give faulty advice, for example, to a beneficiary on a tax issue or a distribution issue, whether you're entitled to distributions, when you're entitled to distributions, how much you're entitled to. And those things would really fall in the category of giving faulty legal advice about the meaning of governing trust documents or the applicable law and may, I don't have that case, but may fall outside of this exclusion because they would not be directly involving handling money, handling property or investments. Similarly, there could be a case where a lawyer is acting, for example, as a trustee under a deed of trust and you might have a claim for impacted lien holders or adjoining property owners and that would also not really necessarily involve funds handling. It would involve potentially negligent advice by the lawyer as to the applicable trust deed or Virginia's laws on foreclosure or something else, but it would not necessarily fall within the ambit of the exclusion. So as Judge Davis said below, coverage for trustees may be narrowly limited, but it's not illusory. There is coverage, but it's not for what Mr. Farthing was doing in the case below. Lastly, Your Honors, one additional basis in our briefs that we continue to argue why it's an independent basis on which you could affirm the district court's damages in the policy. If you look at the damages provision, which is in 2.6.4, it, like the professional services definition, says it includes certain things and it does not include other things. One of the things that it says is not included is a reduction of funds or property of any person controlled by an insurer. And if you look at what the trial judge awarded here in terms of monetary damages, it was specifically for a reduction of what the trust funds would have been had Mr. Farthing met his standard of care as a prudent investor that is imposed on him by Virginia law. And what the judge awarded was the difference between if he'd met that standard and what actually happened. And we would argue that that reduction in funds and the amount of trust funds that were available falls within that exception to the damages definition. And none of this should be surprising. The point here is that ALPS tried to say in three or four ways or three or four different places, all the ones that I've already discussed, we don't cover funds handling. We don't cover it as an investment. We don't cover it as a non-investment. If you lose somebody's money as opposed to giving them faulty legal advice, we are not going to cover that. And our position is that the insurer was on fair notice because the policy is clear and unambiguous in all those places. And the remedy for the lawyer was to go get insurance that would cover funds handling if he needed to be insured against those risks. And if the court doesn't have any other questions, I will resume my seat. Thank you, sir. Thank you. Mr. Larsen. Just, Floyd, if I can, just get back to your Honor's question to my colleague, and that was what about this, why wasn't it negligent advice? And that implicates the question or suggests, well, who gave the advice and to whom? And there, again, was no advice given by Farthing to anyone. It would be a stretch to say that he's giving advice to himself, advising himself to make, you know, whatever stock selection he chose. But that simply is the reason. It's not investment advice. He wasn't giving advice to anyone. And, Judge Harris, if I could respond just to your Honor's question, and that is looking at 3.1.8, and the question from the court, at least as I understand it is, well, when they refer to trust account, isn't that what we're talking about here? And I would say the answer is no, and Judge Davis, likewise, recognized the answer was no because it says negligent supervision by any person of client or trust funds, trust account funds, referring to the normal situation where an attorney is holding funds, maybe not just for his client. Maybe he's holding something in escrow. He doesn't have a legal title to the property in that situation. So Judge Davis recognized that that section didn't apply to what was happening here and then goes on but then looks at funds or property of any other person. So basically it's negligent supervision of funds or property of any other person, and that's where the error was made because he failed to appreciate that under Virginia law these are not the trust corpus, is not the funds of another person. But you're assuming that, well, it doesn't really matter, but you're assuming that the other modifies any other, it has to be other than the trustee. And I guess I'm reading it more, or at least it could mean client and trust accounts, clients basically, or funds or property of someone who's not a client, held or controlled, other than so that the other is referring back to the first part of that sentence. I'm not just talking about clients and trust account funds. I'm talking about other funds that the insured also controls. See what I mean? I hear what you're saying, but with all respect, it says of any other person, not of any other funds. Right, but the person would be the client. I'm sorry. It doesn't matter. It doesn't matter. I do understand your argument. Okay. So the final comment that I just want to have is that, you know, in the essence of why there is lawyers' professional liability insurance, protection for those damaged by such an error is part of the public policy of the Commonwealth, and that's why they require attorneys to obtain professional liability insurance. This should inform the frame, the intent of the parties. The point is there's nothing in here that excludes the actions of a trustee that are specifically empowered and granted by statute. It makes perfect sense that they could choose to exclude a lawyer giving investment advice. Okay. Mr. Baird's point I agree with, that it makes perfect sense that they could exclude an attorney when he's acting not as a trustee, but he's handling the property of other parties, and there are certain cases that all speak to that. But in this case, they use the words of any other person, and it's not whether it's trust fund or client funds or whatever, it's not in this case of any other person. That was the error that was made, and there were several cases, the transcontinental case, what I think is the Virginia Supreme Court case in continental casualty. If the court in that case, the Fourth Circuit, really emphasized and really gave more than lip service to the burden that had to be shown of the litigated facts, and that's the same thing that this court should do. The litigated facts did not demonstrate anything about investment advice. The litigated facts didn't suggest anything of negligent supervision of the property of other people. That's not what the court determined. The litigated facts were that Farthing breached his fiduciary duties, acting as a trustee by failing to adhere to the prudent investment rule, and as a consequence, not that there was any, he didn't restore anything, he didn't give back any funds. The court assessed damages because the funds did not achieve what should have been achieved had he complied with the prudent investment rule. I see that my time has ended. Thank you, sir. We appreciate it. Thank you, Your Honor. I'm going to ask the clerk to adjourn court until 9.30 tomorrow and come down and re-counsel. This honorable court stands adjourned until tomorrow morning at 9.30. God save the United States and this honorable court.
judges: Henry F. Floyd, Pamela A. Harris, Allison J. Rushing